IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| UNITED STATES OF AMERICA, | Case No. 4:25-00202-01-CR-W-DGK |
|---|---|
| Plaintiff, | **COUNT ONE:**<br>18 U.S.C. § 1343<br>*(Wire Fraud)*<br>NMT 20 Years Imprisonment<br>NMT $250,000 Fine<br>NMT 3 Year Supervised Release |
| v.<br>FLOZE LACOMBE<br>[DOB: 09/02/1981] | |
| Defendant. | **ALLEGATION OF CRIMINAL FORFEITURE**<br>21 U.S.C. § 853<br><br>$100 Mandatory Special Assessment |

# I N D I C T M E N T

THE GRAND JURY CHARGES THAT:

## COUNT ONE

**A.** **Introduction**

At all times material to this Indictment, unless otherwise specified below:

1. The Economic Injury Disaster Loan Program ("'EIDL") was a United States Small Business Administration ("SBA") program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

2. The SBA is an executive branch agency of the United States that provides support to entrepreneurs and small businesses. The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

3. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136,134 Stat. 281 (2020), was a federal law that was enacted in or around March 2020 to provide emergency financial assistance due to the economic impact caused by the COVID-19 pandemic. The CARES Act authorized the SBA to provide EIDL loans of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the economic impact of the COVID-19 pandemic.

4. To obtain an EIDL loan, a qualifying business was required to submit an application to the SBA and provide information about the business's operations, such as: (1) the number of employees, (2) gross revenues for the 12-month period preceding the disaster, and (3) cost of goods sold in the 12-month period preceding the disaster. For COVID-19 relief EIDL loans, the 12-month period ran from January 31, 2019, to January 31, 2020. A COVID-19 relief EIDL loan applicant was also required to certify that all the information in the application was true and correct to the best of the applicant's knowledge.

5. EIDL loan applications were submitted directly to the SBA. The amount of the loan, if the application was approved, was determined based, in part, on the information provided by the applicant about employment, revenue, and cost of goods sold. Any funds issued under an EIDL loan were issued directly by the SBA. EIDL loan funds could be used by the qualifying business for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.

6. Defendant Floze Lacombe resided in Kansas City, Missouri, within the Western District of Missouri.

B. **The Scheme to Defraud**

7. Beginning on or about July 14, 2020, and continuing through at least November 2021, in the Western District of Missouri, and elsewhere, the defendant, Floze Lacombe, with the intent to defraud, devised and intended to devise a scheme and artifice to defraud the SBA and to obtain money and property from the SBA by means of material false and fraudulent pretenses, representations, and promises, as described further herein.

8. It was part of the scheme and artifice to defraud that on or about July 14, 2020, the defendant submitted an online application for a COVID-19 relief EIDL loan. The defendant's EIDL loan application was received by the SBA through a server located in West Des Moines, Iowa.

9. It was further part of the scheme and artifice to defraud that in the EIDL loan application the company name "Therese Multi Services" was listed as the "Business Legal Name." The EIDL loan application listed the defendant as the 100% owner of Therese Multi Services, and that Therese Multi Services had a business address in Kansas City, Missouri. In truth and fact, "Therese Multi Services" was registered with the Missouri Secretary of State's Office on May 3, 2022, with the defendant listed as the Registered Agent. It was further part of the scheme that the defendant received a business tax number (EIN) for Therese Multi Services on July 14, 2020.

10. It was further part of the scheme and artifice to defraud that the defendant's EIDL loan application for Therese Multi Services listed the "Gross Revenues for the Twelve (12) Month[s] Prior to the Date of the Disaster (January 31, 2020)" as $71,000, and a Cost of Goods Sold as $22,000. In truth and fact, Therese Multi Services did not

3

Case 4:25-cr-00202-DGK    Document 1    Filed 06/27/25    Page 3 of 7

receive $71,000 in gross revenues nor did it have $22,000 in Cost of Goods Sold during the specified date range.

11. It was further part of the scheme and artifice to defraud that the defendant's EIDL loan application for Therese Multi Services provided the following as the bank account associated with Therese Multi Services: Community American Credit Union (CACU) account number ******8705. In truth and fact, that bank account was a personal checking account held by the defendant. At the conclusion of the same ElDL loan application for Therese Multi Services, the defendant affirmed the following: I hereby certify UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES that the above is true and correct."

12. It was further part of the scheme and artifice to defraud that, on or about July 15, 2020, the defendant completed and signed a Loan Authorization and Agreement for the Therese Multi Services EIDL loan. The Loan Authorization and Agreement adopted by the defendant included a number of terms, including that Therese Multi Services "will use all the proceeds of this Loan solely as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020, and continuing thereafter." The defendant also agreed-as part of the Loan Authorization and Agreement---that [a]ll representations in the Borrower's Loan application (including all supplementary submissions) are true, correct and complete and are offered to induce SBA to make this Loan."

13. It was further part of the scheme and artifice to defraud that, based on the representations made by the defendant in her EIDL loan application, the SBA authorized the EIDL loan to Therese Multi Services.

14. It was further part of the scheme and artifice to defraud that, on or about July 21, 2020, the defendant's personal CACU checking account (account number xxx8705) received a deposit via Automated Clearing House transfer from "SBAD Treas 310" with the EIDL loan proceeds in the amount of $24,500.

15. It was further part of the scheme and artifice to defraud that the defendant spent the EIDL loan proceeds on personal expenses, not associated with Therese Multi Services, including payments on the purchase of a home.

C. **Wire Transmission**

16. On or about July 21, 2020, within the Western District of Missouri, and elsewhere, for the purpose of executing the above-described scheme and artifice to defraud and obtain money and property by means of false and fraudulent pretenses, representations and promises and for the purpose of executing the same, defendant Floze Lacombe, did knowingly cause to be transmitted by means of wire communication in and affecting interstate commerce, certain writings, signs, signals, pictures, or sounds, including an electronic EIDL loan funding for Therese Multi Services. The EIDL disbursement payment originated with the SBA through the U.S. Treasury Department, Federal Disbursement Services Department in Kansas City, Missouri, through the Federal Reserve Financial Services Payment Processing Site located in East Rutherford, NJ, and an Automated Clearing House (ACH) payment of $24,500 was transmitted to the defendant's CACU bank account.

All in violation of Title 18, United States Code, Section 1343.

# FORFEITURE ALLEGATION

17.     The allegations contained in Count One of this Indictment are re-alleged and fully incorporated herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

18.     Upon conviction of the offense of wire fraud under Title 18, United States Code, Section 1343, as alleged in Count One of this Indictment, the defendant, Floze Lacombe, shall forfeit to the United States any property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of such violation. The property to be forfeited includes, but is not limited to, a sum of money equal to the total value of any property, real or personal, constituting or derived from any proceeds traceable to such violation, which is at least $24,500.

19.     If any of the property described above, as a result of any act or omission of the defendant:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third party;

    c.  has been placed beyond the jurisdiction of the court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

                                                      A TRUE BILL.

June 27, 2025                      *SIGNATURE ON FILE WITH USAO*
DATE                                FOREPERSON OF THE GRAND JURY

*/s/Paul S. Becker*
Paul S. Becker
Assistant United States Attorney
Western District of Missouri